## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 1:13-cv-21016-FAM

CARLOS GUARISMA, an individual,
on behalf of himself and all others similarly
situated,

       Plaintiff,

  v.

ADCAHB MEDICAL COVERAGES, INC.,
a Florida corporation, and BLUE CROSS AND
BLUE SHIELD OF FLORIDA, INC., d/b/a
FLORIDA BLUE, a Florida corporation,

       Defendants.

_____/

## PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Carlos Guarisma respectfully submits this memorandum in support of final approval of the Settlement reached in this class action.  For the reasons set forth herein and in the papers previously submitted, the Settlement is fair, adequate, and reasonable, and in the best interests of the Settlement Class.  Accordingly, Plaintiff respectfully requests that the Court grant final approval to the Settlement by: (1) approving the proposed Settlement as fair, adequate, and reasonable for the certified Settlement Class; (2) determining that adequate notice was provided to the Settlement Class; (3) granting the requested attorneys' fees, costs, and incentive award; and (4) entering the proposed Final Approval Order attached as Exhibit B to the Agreement.

The response to the Settlement has been overwhelmingly positive.  There have been no objections, and five opt-outs.  Claim forms were received as to 10,875 telephone numbers, which represents a 6.15% participation rate when considered in light of the 176,652 cell phone numbers

1

called, which were identified through discovery. None of the federal or state governmental

agencies notified of the Settlement under 28 U.S.C. § 1715 have asserted any criticism or

objection.  If final approval is granted as requested, Settlement Class Members who submitted

Valid Claim Forms will receive an estimated $247 each,[1] well within the range of reasonableness

compared to other class actions under the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227. Under no circumstances will Florida Blue receive any reversion. For the reasons

stated herein, the Court should grant final approval of this Settlement.

## I.      FINAL APPROVAL SHOULD BE GRANTED.

"[B]efore approving a [proposed class action] settlement, the district court must find that

it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'"

*Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)); *see also* Fed. R. Civ. P. 23(e)(2).

A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of

the class as a whole are better served by the settlement than by further litigation." *Manual for*

*Complex Litig. (4th)* ("*MCL 4th*") § 21.61, at 480 (2010).

However, in evaluating a proposed class settlement, "the court should be mindful of the

judicial policy favoring settlement and cognizant that compromise is the essence of settlement."

*In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (citations

and quotations omitted). A proposed class settlement should be reviewed in light of the strong

public and judicial policy favoring settlement of class actions and, in doing so, the Court should

not substitute its judgment for that of the parties. *In re Checking Account Overdraft Litig.*, 830 F.

---

[1]        The calculation is: ($4,500,000 Settlement Fund - $300,000 approximate Settlement
Administration Costs - $1,500,000 requested attorneys' fees and $25,463.96 costs - $15,000
requested incentive award) ÷ 10,875 Valid Claim Forms = approximately $247.

2

Supp. 2d 1330, 1341 (S.D. Fla. 2011); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493

(11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

> **A.    The Settlement Is the Result of Informed, Arm's Length Negotiations Absent of Collusion.**

A proposed class settlement is presumptively fair where it "is the product of arm's length

negotiations, sufficient discovery has been taken to allow the parties and the court to act

intelligently, and counsel involved are competent and experienced."  H. Newberg & A. Conte,

*Newberg on Class Actions* ("*Newberg*") § 11:41 (4th ed. 2002); *accord In re Checking Account*

*Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).  The Settlement satisfies this test.

To reach this Settlement, the Parties engaged in extensive arm's-length negotiations,

including two formal, in-person mediations with respected third-party neutral Rodney A. Max,

and numerous other informal negotiations between counsel.  (DE 92, Pl.'s Mot. Fees, at pp. 5-6.)

The class representative, Carlos Guarisma, has remained involved throughout this litigation,

including by working with Class Counsel to investigate and confer on the prosecution of his

claims, reviewing and providing comments on documents, including the Agreement, and

participating in the settlement process.  (DE 92, Pl.'s Mot. Fees, at p. 12, Guarisma Decl. ¶ 3.)

The Parties' settlement discussions culminated in an Agreement that provides substantial

relief to the Settlement Class. Under the Settlement, Defendant Blue Cross and Blue Shield of

Florida, Inc. ("Florida Blue")[2] has agreed to establish a $4,500,000 Settlement Fund, from which

Settlement Benefits will be distributed on a *pro rata* basis for each telephone number identified

by a Settlement Class Member in a Valid Claim Form, after payment of any Settlement

Administration Costs, Class Counsel's attorneys' fees and costs, and any approved incentive

---

[2]    ADCAHB Medical Coverages, Inc. ("ADCAHB") was dismissed from the case without prejudice on September 29, 2014, and is not part of this Settlement. This Settlement is not intended to affect class member claims against ADCAHB.

award. (Agreement ("Agr.") ¶ III.E.2.) Florida Blue has also agreed to maintain practices aimed at preventing further calls to cell numbers for which it and its vendors lack the requisite consent. (Agr. ¶ III.E.1.) The Parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions, including those based on the TCPA. (*See generally* DE 92-1, 92-2, 92-4.)

The Settlement is the result of a thorough investigation, hard fought litigation and protracted negotiations.  Among other things, first and third-party discovery conducted by Plaintiff resulted in the production of key information and documents regarding Defendants' calling practices, including records of the actual calls ADCAHB made to Settlement Class Members on Florida Blue's behalf—information crucial for Plaintiff to evaluate class-wide damages.  (*See* Burke Decl. ¶ 12, attached as Exhibit A.)  This discovery permitted Plaintiff to effectively negotiate on behalf of the class, and ultimately achieve the exemplary Settlement for which approval is now sought.  (*Id.*)  For these reasons, the Settlement is entitled to a presumption of fairness.

**B.   Class Members Received the Best Notice Practicable.**

This Court has already determined that the Notice Program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto.  (DE 91 at 5.)  The Notice Program has been fully implemented by independent Claims Administrator Kurtzman Carson Consultants, LLC ("KCC"). (Racines Decl. ¶¶ 2-16, attached as Exhibit B.)

After Plaintiff's counsel provided KCC with a list of the 176,652 cell phone numbers discovery revealed were called by ADCAHB with regard to Florida Blue insurance, KCC performed reverse address lookups to identify associated names and mailing addresses.  (*Id.* ¶ 5-

4

9.)  This data was also run against the National Change of Address database for increased

accuracy, and on March 26, 2015, KCC mailed a Mail Notice postcard with return Claim Form

to each of the 133,740 unique names and addresses so identified.  (*Id.* ¶¶ 5-9; *see* Agr., Ex. C.)

The Notice Program also included a robust internet impression notice campaign, to

provide notice to Settlement Class Members who were called on landline phones, or for some

other reason may not have received mailed notice. (Racines Decl. ¶¶ 10-12.)  KCC also created a

website containing the long-form Website Notice, Claim Form, Settlement Agreement,

Preliminary Approval Order, and other information relevant to the Settlement.[3]  (*Id.* ¶ 15.)  This

dedicated website also permitted Settlement Class Members to submit claims directly online. (*Id.*

¶ 15.)  The combined direct notice, far-reaching campaign of over 11.5 million unique internet

impressions, and website notice are estimated to have provided Class Notice to approximately

76.7% of all likely Settlement Class Members. (*Id.* ¶ 13). *See* Federal Judicial Center, *Judges'*

*Class Notice and Claims Process Checklist and Plain Language Guide*, at p. 3 (2010)

(considering notice efforts reaching 70% of class to be reasonable). Additionally, the Notice

Program included an additional 500,007 impressions through the website bankrate.com, which

because of a lack of data, were not included in the reach calculation above. (*Id.* ¶ 12.)

The Class Notice provided to the Settlement Class informed them of, among other things:

(1) information about the Action, the Settlement, and the release; (2) deadlines for Settlement

Class Members to file a Claim Form, opt out of the Settlement, or object to the Settlement; (3)

the amount being sought by Class Counsel in attorneys' fees and the proposed incentive award

for Plaintiff; and (4) the date and location of the Final Approval Hearing.  Additionally, Florida

Blue used KCC to provide timely notice of the Settlement to all appropriate federal and state

---

[3]      *See* www.FloridaBlueTCPASettlement.com.

officials, pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1715(a)(2). (*Id.* ¶ 3.) None of those officials raised any concerns or objections. (*Id.*)

The results of the notice campaign were positive. KCC received a total of 10,421 claim forms, which identified 10,875  unique telephone numbers that were called.[4] (*Id.* ¶ 19). When considered in light of the fact that there were 176,653 cell phone numbers identified as part of the settlement, this number represents an approximate 6.1% participation rate, which compares favorably to other consumer class action settlements. *See, e.g., Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("'[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.'") (quoting *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012). Thus, the Notice Program approved by this Court and implemented by KCC has successfully provided notice of these proceedings and of the matters set forth therein, including the Agreement, to all parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

###### C.      The Settlement Satisfies the Criteria for Final Approval.

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") (citation omitted); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) ("'Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.'") (quoting *In*

---

[4]      Class members are permitted to submit one claim for each phone number on which they received calls. Some class members submitted claims for multiple phone numbers. (Agr. ¶ III.E.3.a.)

*re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'") (citation omitted).

In determining whether a proposed settlement adequately protects the interests of the absent class members, courts generally consider the following: "'(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the … range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the … opposition to the settlement; and (6) the stage of proceedings[.]'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). Applied to this case, the relevant criteria support final approval of the Settlement.

### 1.   *Likelihood of Success at Trial*

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. Here, Florida Blue vigorously defended its position throughout the litigation and negotiation process, and has expressed every intention of continuing a spirited defense, absent settlement, through trial.  As such, Plaintiff's success at trial is in no way guaranteed, supporting final approval of the Settlement.

Although Plaintiff has thoroughly investigated the factual and legal bases for his claims, and has developed substantial evidence supporting Florida Blue's ultimate liability for violations of the TCPA, one cannot ignore the significant risks in continuing the litigation had settlement not occurred.  Plaintiff's claims rest on the TCPA's prohibition against using an "automatic telephone dialing system" to make calls to cell phone numbers without the "prior express consent" of the called party, *see* 47 U.S.C. § 227(b)(1)(A)(iii), as well as its prohibition against initiating telephone solicitations to residential phone numbers that have been placed on the National Do Not Call Registry, *see* 47 C.F.R. § 64.1200(c). (DE 15, 1st Am. Compl. ¶ 1.)[5] This case therefore turns on, among other things, whether the calls were made using an "automatic telephone dialing system," competing interpretations as to whether Class Members "consented" to receiving the calls at issue, Florida Blue's compliance with the do-not-call rules, and the ultimate question of whether Florida Blue could ever be held liable for calls made by a third party.

For Defendant's part, it has steadfastly denied that it violated the TCPA, and has asserted multiple affirmative defenses against Plaintiff's allegations, including consent for the calls at issue. (DE 27, Answer to 1st Am. Compl., at pp. 10-12.)  Complicating this issue, the FCC is currently considering numerous petitions, many of which were made by industry advocates urging the FCC to loosen prohibitions against calls like the ones at issue in this case. Some pending petitions—including petitions to limit the definition of an "automatic telephone dialing system" under the TCPA—could, if granted, require additional discovery or even significantly

---

[5] While TCPA claims brought under 47 U.S.C. §227(b)(1)(A)(iii) for autodialed calls to cell phones are actionable regardless of whether the phone is a business or residential line, claims under 47 C.F.R. § 64.1200(c) are only actionable as to residential phone lines. The calls made by ADCAHB on behalf of Florida Blue that are the subject of this case were targeted to businesses, which renders claims for any calls other than section 227(b)(1)(A)(iii) for autodialed calls to cell phones very unlikely.

impede the ability to obtain class relief.  Although Class Counsel actively advocates in the FCC in favor of consumers, the process can be quite unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior orders that facsimile advertisements must contain specific language explaining how recipients can "opt-out" of receiving more faxes, but providing *retroactive immunity* for violators that file petitions with the FCC; a wholly unexpected and incongruous result from the perspective of Plaintiff's counsel.[6]

To add further complication, the calls at issue were not made by Defendant Florida Blue, itself, but by its third-party vendor, ADCAHB, via yet another third-party dialing company, Fextel, Inc. As such, Florida Blue has maintained that this would require Plaintiff to establish its vicarious liability for the calls at issue. (See DE 27, Answer to 1st Am. Compl., at p. 11) (asserting that "[t]he alleged damages … were … caused by the acts and/or conduct of parties other than BCBSF for whom BCBSF is not responsible"); *see, e.g., Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13-2018, 2013 WL 5346430, at *1 (N.D. Ill. Sept. 23, 2013) (granting motion to dismiss without prejudice in TCPA class action alleging defendant's liability based on federal common law principles of agency). Thus, absent settlement, Plaintiff and the class would face the possibility of receiving <u>no</u> relief under the TCPA.

Another risk Plaintiff faced going forward is that this Court would refuse to certify the class due to individualized issues of consent. Here, Florida Blue has contended that it had class members' "prior express consent" for the calls at issue.[7] (*See, e.g.,* DE 27, Answer to 1st Am. Compl., at p. 10.) As such, Plaintiff could not discount the possibility that an opposition to class

---

[6]      *See*      http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf.

[7]      *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 685 (S.D. Fla. 2013), *reconsideration denied* (May 30, 2013) ("[C]onsent is a defense to a TCPA claim.") (citation omitted).

certification based on this purported consent would have been successful.  "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09-5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citations omitted); *compare, e.g., Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435, 2012 WL 6725872, at *5 (S.D. Fla. Dec. 27, 2012) (denying class certification), *with Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013), *reconsideration denied* (May 30, 2013) (granting class certification).[8]

If Florida Blue were able to present convincing facts to support its position, the Court could have refused to certify a class, leaving Plaintiff to pursue his claims only on an individual basis.[9] Instead, settlement allows the Settlement Class to avoid the inherent risk, complexity, time, and cost associated with continued litigation. *See United States v. City of Miami, Fla.*, 664 F.2d 435, 439 (5th Cir. 1981) ("'The parties to litigation may be compromise and settlement not only save the time, expense, and psychological toll but also avert the inevitable risk of litigation.'") (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).

Finally, there is a material risk of losing inherent in any jury trial.  And even if Plaintiff prevailed at trial, Florida Blue would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Settlement Class

---

[8]       Supreme Court precedent clarifies that such concerns do not apply to class certification for settlement purposes, as distinct from litigation purposes. In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court noted that the manageability of a nationwide class, such as manageability issues arising from legal and factual variation, is not implicated in settlement, and need not be considered because "the proposal is that there be no trial." *Id.* at 620.

[9]       Some courts also view awards of aggregate, statutory damages with skepticism and reduce them—even after a plaintiff has prevailed on the merits—on due process grounds.  *See, e.g., Harris v. Mexican Specialty Foods, Inc.*, 564 F. 3d 1301 (11th Cir, 2009) (acknowledging that statutory damages may be susceptible to a constitutional excessiveness review, but finding the District Court's resolution premature).

Members. Under the Settlement, Settlement Class Members avoid all of the risks and obstacles to recovery and will receive substantial benefits in a timely fashion.

Plaintiff and Class Counsel have negotiated an excellent settlement for the Settlement Class, which requires Florida Blue to establish a non-reversionary Settlement Fund of $4,500,000 and take affirmative steps to prevent further autodialed calls to cell phones without the consumer's prior express consent. (Agr. ¶ III.E.). In light of the real risks outlined above combined with the fact that Plaintiff and Settlement Class Members faced lengthy, protracted, and expensive litigation had they not settled, this is a fair settlement that puts money in Settlement Class Members' pockets immediately. The Settlement should be approved.

**2.      *Range of Possible Recovery and Point at which Settlement Is Fair, Reasonable, and Adequate***

Analysis of the second and third *Bennett* factors—the range of possibly recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable—are often analyzed together. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007). However, "the Court is not confined to the mechanistic process of comparing the settlement to the estimated recovery times a multiplier derived from the likelihood of prevailing on the merits.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 323 (N.D. Ga. 1993) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981)). "[T]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326; *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 325 ("That the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair. 'In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'")

11

(quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974)). Although the Settlement does not provide for 100% of the amount that Settlement Class Members could receive if they sued on their own and prevailed, "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate…. This is because a settlement must be evaluated in light of the attendant risks with litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1350 (citations omitted).

Here, while Plaintiff believes he would ultimately prevail on liability, it would be extraordinarily difficult to obtain full monetary relief for Settlement Class Members due to the size of the class and the volume of allegedly illegal calls they received.[10] *See, e.g., A Fast Sign Co., Inc. v. Am. Home Svcs., Inc.*, 291 Ga. 844 (2009) (only 309,000 violations resulted in $459,000,000 award). Due to the size of the class and scope of the damages, the $4,500,000 Settlement Fund represents a fair compromise that recognizes the significance of the Settlement Class' claims and the practical realities surrounding obtaining, and collecting, a judgment for the full amount of a judgment. (Burke Decl. ¶ 14.)

Moreover, the amount that each claiming Settlement Class Member is expected to receive under the Settlement fits well within the range of recovery approved in other TCPA class cases. *See, e.g., Jonsson v. USCB, Inc.*, No. 13-8166, Dkt. No. 83 (C.D. Cal. May 28, 2015) (approving TCPA class settlement with claimant recovery of approximately $70); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-00248, Dkt. Nos. 116, 137 (S.D. Cal. 2008) (approving TCPA class settlement with claimant recovery of $40); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-01413,

---

[10]     The TCPA generally provides for statutory damages of $500 per violation, or up to $1,500 where the violation was "willfully or knowingly" committed. 47 U.S.C. §§ 227(b)(3), 227(c)(5). *See Rose v. Bank of Am. Corp.*, No. 11-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) ("[I]t is unlikely that a settlement would result in claimants receiving the full $500 or $1,500 per violation they might be entitled to under the TCPA.").

2008 WL 5458986, at *5 (S.D. Cal. Dec. 10, 2008) (approving TCPA class settlement with

claimant recovery of $70); *Steinfeld v. Discover Fin. Servs.*, No. 12-01118, Dkt. Nos. 96 ¶ 6, 97

(N.D. Cal. Mar. 31, 2014) (approving TCPA class settlement with expected claimant recovery of

$46.98); *In re Capital One TCPA Litig.*, No. 11-5886, 2015 WL 605203, at *5 (N.D. Ill. Feb. 12,

2015) (approving TCPA class settlement with claimant recovery of $34.60). This factor,

therefore, supports approval of the Settlement.

### 3.     *Complexity, Expense, and Duration of Litigation*

The next *Bennett* factor to consider is the complexity, expense, and duration of litigation.

"[S]ettlements contribute greatly to the efficient utilization of our scarce judicial resources[,]"

*Cotton*, 559 F.2d at 1331, and "[t]he law favors compromises in large part because they are often

a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens v.

Wometco Enters., Inc.*, 118 F.R.D. 534, 543 (S.D. Fla. 1988).  In evaluating this *Bennett* factor,

courts "should consider the vagaries of litigation and compare the significance of immediate

recovery by way of the compromise to the mere probability of relief in the future, after

protracted and expensive litigation." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at

326 (citation omitted). This factor weighs in favor of approval.

The Parties have conducted extensive discovery in this case, including written, first-party

discovery, third-party subpoenas, and depositions. (Burke Decl. ¶ 12.) At times, discovery was

contentious, requiring Plaintiff to file a motion to compel (DE 34). The extent of discovery

ensured that Class Counsel were sufficiently informed to adequately negotiate on behalf of the

class, supporting the overall reasonableness of the Settlement. *See, e.g., Williams v. Nat. Sec. Ins.

Co.*, 237 F.R.D. 685, 695 (M.D. Ala. 2006) ("Extensive discovery ensured that plaintiffs'

counsel was fully informed in negotiating a reasonable compromise and assessing the fairness of

the proposed settlement. The amount of discovery completed in this case weighs heavily in favor of approving the settlement.").

In the absence of Settlement, it is likely that the expense, duration, and complexity of protracted litigation would be substantial. Prior to the Court's consideration of Plaintiff's motion for preliminary approval of the Settlement, this matter had been scheduled for trial starting February 9, 2015 (DE 49), in front of Judge King. Because of the scheduling order that was in place at the time of settlement, Plaintiffs had already substantially drafted their dispositive motions and had begun putting together motions *in limine*. The Parties would have had to expend substantial additional time and resources preparing for trial, including protracted class certification and summary judgment briefing and proceedings. Thus, continued litigation of this matter would delay its resolution and inflict unnecessary additional expense, and substantial risk, on both sides. Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "'it [is] proper to take the bird in the hand instead of a prospective flock in the bush.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 326 (quoting *Oppenlander*, 64 F.R.D. at 624). The complexity, expense, and duration of litigation thus weigh in favor of approving the Settlement.

### 4.    *Substance and Amount of Opposition to Settlement*

The next *Bennett* factor to consider is the substance and amount of opposition to the settlement. Here, KCC has estimated that the notice plan reached approximately 76% of the class members, and no objections have been received. (Racines Decl. ¶¶ 17-18.) Moreover, only five persons have excluded themselves. (*Id.*) This is strong circumstantial evidence that the Settlement is fair; indeed, settlements have been approved over the objections of even a large percentage of the class. *See Cotton*, 559 F.2d at 1331 ("A settlement can be fair notwithstanding

a large number of class members who oppose it[,]" citing *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974), in which more than 20% of the class objected).

Moreover, while notice of the Settlement was sent to the U.S. Attorney General and the Attorneys General for all fifty states, none have voiced any opposition to the terms of the Agreement. (Racines Decl. ¶ 3.) This lack of governmental opposition to the Settlement likewise militates in favor of its approval. *See Fresco v. Auto. Directions, Inc.*, No. 03-61063, 2009 WL 9054828, at *5 (S.D. Fla. Jan. 20, 2009) (noting, in addressing this *Bennett* factor and approving settlement, that "no state or federal government officials have filed objections"). In all, the reaction of the Class has been overwhelmingly supportive of the Settlement. Accordingly, the absence of opposition to the Settlement weighs strongly in favor of final approval.

### 5.    *Stage of Proceedings at which Settlement Was Achieved*

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. Courts look at this factor "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[T]he trial court may legitimately presume that counsel's judgment that they had achieved the desired quantum of information necessary to achieve a settlement is reliable.") (citation and quotations omitted); *Cotton*, 559 F.2d at 1332.

Here, the Agreement was reached over a year and a half into the litigation, and not until the Parties had first engaged in significant substantial first and third-party discovery regarding the size of the class, range of damages, and the contrasting strengths of the Parties' claims and defenses. (*See, e.g.,* Burke Decl. ¶ 12.) Hence, there should be no question that, by the time the

15

Settlement was reached, Plaintiff had enough information to sufficiently evaluate the strength of the claims of the class and weigh the benefits of Settlement against continued litigation. The thorough investigation and evaluation of Plaintiff's legal claims, extensive discovery, and numerous arm's-length negotiations—including through two formal, in-person mediations before a third-party neutral—favors final approval of the Settlement.

**6.      *The Opinion of Counsel***

"Courts often accord great weight to the opinions of counsel for the class in approving class action settlements." *Meyer v. Citizens & S. Nat. Bank*, 677 F. Supp. 1196, 1209-10 (M.D. Ga. 1988) (citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983)). In fact, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties ... [and], absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).  Here, Class Counsel—with substantial experience in TCPA and other consumer class action litigation, and with the benefit of sufficient discovery—believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole.  (Burke Decl. ¶ 14, DE 84-2 ¶ 15, DE 84-3 ¶ 16.)  This factor, therefore, supports approval of the Settlement.

**III.      CONCLUSION**

The Settlement is fair, adequate, and reasonable, providing substantial benefits to the Settlement Class through not only prospective relief, but direct monetary payments of approximately $247 for each phone number submitted though a claim form. This is an outstanding result in light of the statutory violations alleged, the recoveries potentially available under the law and the risks of continued litigation. The Court should, therefore, approve the Settlement in its entirety.  Class Counsel also respectfully request that the Court award Class

Counsel $1,500,000 in requested attorneys' fees—amounting to one-third of the Settlement Fund—plus $25,463.96 in costs.[11]  Class Counsel further requests that the Court approve an incentive award of $15,000 to Plaintiff Guarisma.

WHEREFORE, Plaintiff Carlos Guarisma respectfully requests that the Court grant final approval of this class action Settlement in its entirety.

Dated:      June 9, 2015   

Respectfully submitted,

CARLOS GUARISMA, an individual,
on behalf of himself and all others
similarly situated,

By:     /s/ Patrick C. Crotty          
     Scott D. Owens (No. 597651)
     Patrick C. Crotty (No. 108541)
     SCOTT D. OWENS, P.A.
     3800 S. Ocean Drive, Ste 235
     Hollywood, FL 33019
     Telephone: (954) 589-0588
     Facsimile: (954) 337-0666
     scott@scottdowens.com
     patrick@scottdowens.com

     Alexander H. Burke
     (admitted *pro hac vice*)
     BURKE LAW OFFICES, LLC
     155 N. Michigan Ave., Suite 9020
     Chicago, IL 60601
     Telephone: (312) 729-5288
     Facsimile: (312) 729-5289
     aburke@burkelawllc.com

---

[11] The Fee Petition filed by plaintiffs, Docket Item 92, indicated that plaintiff's counsel at that time had incurred 20,463.96 in costs, and committed to not requesting more than $5,000 in additional costs. Burke Law Offices, LLC has expended $5,600.93 in additional costs, Exhibit A at 13, but requests that only $5,000 of this be reimbursed as part of the settlement, which if approved would mean the total request for costs is $25,463.96.

Bret L. Lusskin, Jr. (No. 28069)
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Suite 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

*Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2015, I filed the foregoing *Plaintiff's Unopposed Motion and Incorporated Memorandum in Support of Final Approval of Class Action Settlement* with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following counsel of record:

| | |
|---|---|
| Anthony A. Bongiorno | Bryan M. Webster |
| Matthew L. Knowles | McDermott Will & Emery, LLP |
| McDermott Will & Emery, LLP | 227 W. Monroe St. |
| 28 State St. | Chicago, IL 60606 |
| Boston, MA | bwebster@mwe.com |
| abongiorno@mwe.com | |
| mknowles@mwe.com | |
| | John P. Marino |
| Justin B. Uhlemann | Lindsey R. Trowell |
| Marcos D. Jimenez | Smith Gambrell Russell |
| McDermott Will & Emery, LLP | 50 N. Laura St., Suite 2600 |
| 333 Avenue of the Americas, 45th Floor | Jacksonville, FL 32202 |
| Miami, FL 33131 | jmarino@sgrlaw.com |
| juhlemann@mwe.com | ltrowell@sgrlaw.com |
| mjimenez@mwe.com | |

*Counsel for Defendant Florida Blue*

    /s/ Patrick C. Crotty
One of Plaintiff's Attorneys

19